# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **LACHELLE DIXON-HARRIS**<br>c/o Hux Law Firm, LLC<br>5210 Herringbone Dr. Apt 303<br>Cincinnati, OH 45227<br><br>**Plaintiff,**<br><br>v.<br><br>**CLEVELAND METROPOLITAN SCHOOL DISTRICT**<br>c/o Dr. Warren G. Morgan II<br>1111 Superior Ave E, Suite 1800<br>Cleveland, OH 44114<br><br>**Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br><br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**JURY DEMAND ENDORSED HEREIN** |

## NATURE OF THE ACTION

1. This is an action for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") and related Ohio state laws. Plaintiff Lachelle Dixon-Harris brings this action against Defendant Cleveland Metropolitan School District for unlawful retaliation following her report of gender-based discrimination, resulting in adverse employment actions including altered performance evaluations and termination.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 2000e-5(f)(3) as this action involves claims arising under Title VII of the Civil Rights Act of 1964.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this District and all events giving rise to this action occurred in this District.

## PARTIES

5. Plaintiff Lachelle Dixon-Harris is a resident of Cuyahoga County, Ohio. At all times relevant to this Complaint, Dixon-Harris was an employee of Defendant within the meaning of Title VII.

6. Defendant Cleveland Metropolitan School District ("CMSD" or "Defendant") is a public school district organized and existing under the laws of the State of Ohio, with its principal place of business at 1111 Superior Avenue E., Suite 1800, Cleveland, Ohio 44114. At all times relevant to this Complaint, Defendant was an employer within the meaning of Title VII, employing more than 500 employees.

## ADMINISTRATIVE PREREQUISITES

7. Dixon-Harris timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 11, 2024, which was assigned Charge Number 532-2025-01053.

8. The EEOC issued Dixon-Harris a Notice of Right to Sue on September 9, 2025.

9. This action is filed within 90 days of Dixon-Harris' receipt of the Notice of Right to Sue.

10. Dixon-Harris has satisfied all conditions precedent to bringing this action.

## FACTUAL ALLEGATIONS

### Background

11. Dixon-Harris was employed by Defendant as an Assistant Principal from August 1, 2022, until her termination on June 30, 2024.

12. From August 1, 2022, through July 31, 2023, Dixon-Harris served as Assistant Principal at Joseph Gallagher School within the CMSD system.

13. On October 6, 2023, Dixon-Harris was reassigned as Assistant Principal at Miles School due to budgetary needs. She served under Principal Roy James and began her duties supporting grades 3-5.

### The Protected Activity

14. On February 12, 2024, Principal Roy James made a discriminatory comment based on gender. When discussing problems with bus drivers, Principal James stated to a group of women employees, "you know why we are having so many problems with the bus drivers this year? Because they are all women."

15. Dixon-Harris, a woman, found Principal James' "joke" to be particularly offensive, especially in light of the hostile work environment she was already subjected to based on her gender.

16. On February 26, 2024, Dixon-Harris reported this gender-based discriminatory comment to Network Leader Sonja Clark via email, constituting protected activity under Title VII.

17. Rather than investigating the complaint, Network Leader Clark instructed Dixon-Harris to speak directly with Principal James about the issue, despite the risk of retaliation.

**Performance Evaluation Process Before Protected Activity**

18. On December 11, 2023, Dixon-Harris emailed Principal James requesting information about her evaluation timeline.

19. On January 30, 2024, Principal James conducted Dixon-Harris' first formal observation.

20. On February 22, 2024, a post-observation conference was completed with positive feedback, focusing on Dixon-Harris' support of a third-grade teacher with NWEA data improvement.

4

21. The evaluation process was proceeding normally with constructive feedback prior to Dixon-Harris' protected activity.

### Immediate Retaliation Following Protected Activity

22. On March 12, 2024, Dixon-Harris had signed her completed FAO1 evaluation documents.

23. On or about March 14-15, 2024, Network Leader Clark informed Principal James about Dixon-Harris' discrimination complaint.

24. On March 15, 2024, immediately after learning of Dixon-Harris' complaint, Principal James contacted Megan Langler and Heather Grant requesting to reopen and revise Dixon-Harris' already-signed evaluation.

25. Principal James added negative comments to Dixon-Harris' evaluation in Domain 1 Leadership sections 1.1.1, 1.1.2, and 1.4.1 after Dixon-Harris had already signed the document.

26. The post-observation conference originally scheduled for March 15, 2024, was canceled after Principal James learned of the complaint.

27. On April 2, 2024, Dixon-Harris submitted an appeal of her FAO1 evaluation stating: "The comments added are not evidentiarily based, and based on when they were added and how they were added it appears very retaliatory."

### Escalation of Retaliation

28. On April 19, 2024, Dixon-Harris submitted a formal retaliation complaint to CMSD's Equal Employment Opportunity Office, stating: "I am very concerned that after he spoke to Network Leader Clark about my concerns in the email that I sent to her dated Monday, February 26, 2024, my FAO1 was requested to be reopened for retaliatory purposes, on Friday, March 15, 2024."

29. On April 24, 2024, the same day Dixon-Harris spoke with the EEO office about her retaliation complaint, Principal James informed her of his recommendation for non-renewal of her contract.

30. The timing of the non-renewal recommendation immediately following Dixon-Harris' formal retaliation complaint demonstrates a clear pattern of escalating retaliation.

**Hostile Work Environment**

31. Throughout Dixon-Harris' tenure at Miles School, Principal James created a hostile work environment through various actions including:

    a. Restricting Dixon-Harris' ability to leave the building during her lunch period;

    b. Threatening disciplinary action if Dixon-Harris went to eat in her car or purchase food;

    c. Withholding information necessary for Dixon-Harris to perform her duties;

    d. Persistent intimidation through threatening emails;

    e. Ongoing criticism without providing coaching.

**Termination**

32. On May 21, 2024, the Cleveland Board of Education voted on its intent not to renew Dixon-Harris' contract.

33. On June 25, 2024, the Board gave final approval for non-renewal of Dixon-Harris' contract.

34. On June 28, 2024, Dixon-Harris was officially notified of her termination effective June 30, 2024.

35. The stated reasons for non-renewal were pretextual, as evidenced by Principal Thomas Kubiak of Gallagher School telling Dixon-Harris in December 2023 that he "could have her back," directly contradicting any narrative of poor performance.

**Causal Connection**

36. The temporal proximity between Dixon-Harris' protected activity on February 26, 2024, and the adverse employment actions that immediately followed establishes a clear causal connection.

37. The documented pattern shows: (1) positive evaluation trajectory before the complaint; (2) immediate evaluation manipulation after the complaint; (3) escalating retaliation following formal complaint to EEO; and (4) termination.

38. Principal James's involvement in both learning of the discrimination report and recommending non-renewal further demonstrates retaliatory motive.

## COUNT I

## RETALIATION IN VIOLATION OF TITLE VII

### 42 U.S.C. § 2000e-3(a)

39. Dixon-Harris realleges and incorporates by reference all preceding paragraphs.

40. Dixon-Harris engaged in protected activity when she reported gender-based discrimination to Network Leader Clark on February 26, 2024.

41. Defendant, through its agents Principal James and Network Leader Clark, took materially adverse actions against Dixon-Harris including:

    a. Manipulating her performance evaluation;

    b. Creating a hostile work environment;

    c. Recommending non-renewal of her contract;

    d. Terminating her employment.

42. There is a causal connection between Dixon-Harris' protected activity and the adverse employment actions, as demonstrated by temporal proximity and the pattern of escalating retaliation.

43. Defendant's stated reasons for the adverse actions were pretextual.

44. As a direct and proximate result of Defendant's unlawful retaliation, Dixon-Harris has suffered damages including lost wages, lost benefits, emotional distress, humiliation, and damage to her professional reputation.

## COUNT II

## HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII

### 42 U.S.C. § 2000e-2(a)

45. Dixon-Harris realleges and incorporates by reference all preceding paragraphs.

46. Defendant, through Principal James, subjected Dixon-Harris to unwelcome conduct based on her gender, female, and in retaliation for her protected activity.

47. The harassment was sufficiently severe and pervasive to alter the conditions of Dixon-Harris' employment and create an abusive working environment.

48. The harassment included gender-based comments, intimidation, threats, unreasonable restrictions on basic activities like eating lunch, and manipulation of performance evaluations.

49. Defendant knew or should have known of the harassment and failed to take prompt and appropriate remedial action.

50. As a direct and proximate result of Defendant's conduct, Dixon-Harris suffered damages including emotional distress, humiliation, and was constructively discharged.

## COUNT III

## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

### 42 U.S.C. § 2000e-2(a)

51. Dixon-Harris realleges and incorporates by reference all preceding paragraphs.

52. Defendant discriminated against Dixon-Harris because of her gender.

53. Principal James's comment attributing workplace problems to female employees demonstrates gender-based animus.

54. Dixon-Harris was subjected to different terms and conditions of employment because of her gender.

55. Similarly situated male employees were not subjected to the same adverse treatment.

56. As a direct and proximate result of Defendant's discrimination, Dixon-Harris suffered damages.

## COUNT IV

## VIOLATION OF OHIO REVISED CODE § 4112.02

**(Unlawful Discriminatory Practices)**

57. Dixon-Harris realleges and incorporates by reference all preceding paragraphs.

58. Defendant's actions violated Ohio Revised Code § 4112.02, which prohibits discrimination and retaliation in employment.

59. Defendant discriminated against Dixon-Harris because of her gender and retaliated against her for opposing discriminatory practices.

60. As a direct and proximate result of Defendant's violations of Ohio law, Dixon-Harris suffered damages.

## PRAYER FOR RELIEF

10

WHEREFORE, Dixon-Harris respectfully requests that this Court:

A. Declare that Defendant's actions violated Title VII of the Civil Rights Act of 1964 and Ohio state law;

B. Award Dixon-Harris back pay and lost benefits from June 30, 2024, through the date of judgment;

C. Award Dixon-Harris front pay in lieu of reinstatement;

D. Award Dixon-Harris compensatory damages for emotional distress, humiliation, and damage to her professional reputation;

E. Award Dixon-Harris punitive damages to deter future unlawful conduct;

F. Award Dixon-Harris her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k);

G. Award prejudgment and post-judgment interest;

H. Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

          Respectfully submitted,

          _____
          James J. Hux (0092992)
          **HUX LAW FIRM, LLC**
          5210 Herringbone Dr., Apt. 303
          Cincinnati, OH 45227
          Phone: (937) 315-1106
          Fax:    (216) 359-7760
          Email: jhux@huxlawfirm.com

          *Attorney For Plaintiff*